IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

APRIL EMERSON,

    Plaintiff,

vs.          Case No. 10-2321-SAC

MICHAEL J. ASTRUE,
Commissioner of
Social Security,

    Defendant.

MEMORANDUM AND ORDER

This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff disability insurance benefits and supplemental security income payments. The matter has been fully briefed by the parties.

**I. General legal standards**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards. <u>Glenn v. Shalala</u>, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the

1

conclusion. The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion. Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989). Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted. Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992). The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met. Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA). The claimant's physical or mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in

any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled.  If the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other

jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

## II. History of case

On August 5, 2009 administrative law judge (ALJ) Guy E. Taylor issued his decision (R. at 12-21). Plaintiff alleges that she has been disabled since December 31, 2003 (R. at 12). Plaintiff is insured for disability insurance benefits through December 31, 2004 (R. at 12, 17). At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since the alleged onset date of disability (R. at 17). At step two, the ALJ found that plaintiff had the following severe

impairments: multiple sclerosis, morbid obesity, depression/anxiety, mild cognitive disorder, and vision loss in the right eye. Furthermore, the ALJ found that lupus was not a medically determinable impairment (R. at 17). At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 17). After determining plaintiff's RFC (R. at 17), the ALJ found at step four that plaintiff is unable to perform any past relevant work (R. at 19). At step five, the ALJ found that plaintiff could perform other jobs that exist in significant numbers in the national economy (R. at 19-20). Therefore, the ALJ concluded that plaintiff was not disabled (R. at 20).

**III. Are the ALJ's RFC findings supported by substantial evidence and do they comply with the requirements of SSR 96-8p?**

According to SSR 96-8p, the RFC assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts...and nonmedical evidence." The ALJ must explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved. The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the ALJ must explain why the opinion was not adopted. SSR 96-8p, 1996 WL 374184 at *7. SSR rulings are binding on an ALJ. 20 C.F.R. § 402.35(b)(1);

Sullivan v. Zebley, 493 U.S. 521, 530 n.9, 110 S. Ct. 885, 891 n.9, 107 L. Ed.2d 967 (1990); Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). When the ALJ fails to provide a narrative discussion describing how the evidence supports each conclusion, citing to specific medical facts and nonmedical evidence, the court will conclude that his RFC conclusions are not supported by substantial evidence. See Southard v. Barnhart, 72 Fed. Appx. 781, 784-785 (10th Cir. July 28, 2003). The ALJ's decision must be sufficiently articulated so that it is capable of meaningful review; the ALJ is charged with carefully considering all of the relevant evidence and linking his findings to specific evidence. Spicer v. Barnhart, 64 Fed. Appx. 173, 177-178 (10th Cir. May 5, 2003). It is insufficient for the ALJ to only generally discuss the evidence, but fail to relate that evidence to his conclusions. Cruse v. U.S. Dept. of Health & Human Services, 49 F.3d 614, 618 (10th Cir. 1995). When the ALJ has failed to comply with SSR 96-8p because he has not linked his RFC determination with specific evidence in the record, the court cannot adequately assess whether relevant evidence supports the ALJ's RFC determination. Such bare conclusions are beyond meaningful judicial review. Brown v. Commissioner of the Social Security Administration, 245 F. Supp.2d 1175, 1187 (D. Kan. 2003).

The ALJ's RFC findings for the plaintiff are as follows:

> The undersigned finds that the claimant has
> the residual functional capacity to lift
> and/or carry less than 10 pounds; stand
> and/or walk 2 hours in an 8-hour workday;
> sit 6 hours in an 8-hour workday; unlimited
> pushing and/or pulling; occasional
> climbing, balancing, stooping, kneeling,
> crouching and/or crawling; occasional
> fingering, bilaterally limited to 1/3 of an
> 8-hour workday; avoid concentrated
> exposure to heat and vibrations; and
> mentally, limited to unskilled, simple,
> routine work due to short and long-term
> memory loss and limited contact with the
> general public due to agoraphobia based upon
> the claimant's testimony.

(R. at 17). The ALJ's explanation of the basis for his RFC findings was as follows:

> Based on a longitudinal history, the
> undersigned gives controlling weight to
> treating source opinions. The Disability
> Determination Services residual functional
> capacity assessment were not followed based
> upon the claimant's testimony at the hearing.

(R. at 17).

The state agency mental RFC assessment prepared by Dr. Jessop opined that plaintiff was moderately limited in the ability to understand, remember, and carry out detailed instructions, and in the ability to interact with the general public (R. at 416-417). Both these limitations were reflected in the ALJ's RFC findings.

The state agency physical RFC assessment prepared by Dr. Cohen limited plaintiff to lifting 10 pounds, sitting for 6 hours and standing/walking for 2 hours in an 8 hour workday. It

7

indicated that plaintiff did not have any postural, manipulative, visual, communicative, or environmental limitations (R. at 322-329). The ALJ's RFC findings were more restrictive, limiting plaintiff to lifting or carrying less than 10 pounds, and including numerous postural, manipulative, and environmental limitations. As noted above, the ALJ indicated that he gave "controlling weight" to treating source opinions, and did not follow the opinions set forth in the state agency assessments based on plaintiff's testimony (R. at 17).

However, the ALJ did not cite to any treating source opinions which address plaintiff's RFC, and defendant's brief also fails to note any treating source opinions which address plaintiff's RFC. Thus, the only remaining rationale provided by the ALJ to support his RFC findings is plaintiff's testimony. The ALJ indicated that the state agency assessments were not followed based on plaintiff's testimony. Therefore, the ALJ apparently relied on plaintiff's testimony in making his RFC findings, except to the extent that he found plaintiff's testimony not credible.

At her hearing, plaintiff testified about her limitations in holding things and writing:

> Q (by ALJ) You ever have any problems being able to hold on to things like a pen or a pencil, small things?
>
> A (by plaintiff) Actually, yes I do, I used to be a big writer, I used to write letters

8

> all the time, I used to write poet, I was a
> poet writer and now I can barely do any of
> it.
>
> Q Can barely what?
>
> A I can barely do any of it, meaning to the
> point where I can barely hold, like sometimes
> I can't hold onto a pen and write very long.
>
> Q Okay.
>
> A If I were, like my, my older brother's in
> prison, for example, and I would, it would
> probably take me two to three days to write
> him a letter.
>
> Q Okay.
>
> A I'd have to write it a little bit at a
> time.

(R. at 44).

The ALJ found that plaintiff could occasionally finger, bilaterally limited to 1/3 of an 8-hour workday (R. at 17). However, taking 2-3 days to write a letter raises serious questions about plaintiff's ability to engage in fingering activity for 1/3 of an 8-hour workday (about 2.67 hours in an 8 hour workday). The ALJ, despite his reliance on plaintiff's testimony in making his RFC findings, does not indicate why he did not find plaintiff credible on this issue. There is no medical opinion evidence to support this finding by the ALJ.

Plaintiff also testified that when she has flare-ups of her multiple sclerosis (MS), she has tingling and numbness of her hands and feet; sometimes they are so numb that she cannot feel

them (R. at 34). She noted problems with her balance (R. at 43). She then testified that she has flare-ups of MS at least once a month, indicating that the longest her flare-ups had lasted "was probably three weeks" (R. at 52). When she has a flare-up, she indicated that she can't do anything (R. at 52). When not having a flare-up, she can go to the store, maybe clean, or pick up small things, but she cannot clean or sweep the whole house. She has a friend that lives with her who helps her with work around the house. She indicated that she cannot cook on a regular basis, and cannot go outside and play with her child on a regular basis (R. at 52-53).

The ALJ stated in his decision that:

> The claimant alleges multiple sclerosis flare-ups monthly which last about three weeks at a time, but there is no evidence to support her allegation.

(R. at 18). First, the ALJ misstated plaintiff's testimony. When plaintiff was asked how long her flare-ups typically last, she testified: "The longest I've had it was probably three weeks" (R. at 52). Thus, plaintiff testified that the longest flare-up had lasted for three weeks, not that all flare-ups last three weeks at a time.

Second, the medical evidence clearly establishes frequent flare-ups requiring either hospitalization or emergency room visits:

February 2006: 1st really significant episode

of numbness on right side of face and numbness from the waist down resulting in admission to hospital; May 17, 2007 report from Multiple Sclerosis Clinic states that since that time, "she has had multiple episodes of weakness or fall" (R. at 903, emphasis added).

June 11-13, 2006: Plaintiff hospitalized for an abrupt onset of drooping of the right face and tingling/numbness in her right upper extremity (R. at 438-443, 285-287). Dr. Kumar noted that he would give her a note to keep her out of work temporarily (R. at 287).

July 6-8, 2006: Plaintiff hospitalized with acute exacerbation of symptoms suggesting multiple sclerosis; testing revealed MS; left leg weakness was noted (R. at 274-278).

August 21-24, 2006: Plaintiff hospitalized with worsening weakness in both legs as well as severe pain in all extremities, but the legs in particular. Dr. Harms stated that: "The patient remains fairly debilitated and I would not expect that she would be able to return to any employment for at least the next few weeks" (R. at 714-715, emphasis added).

March 17, 2007: Plaintiff hospitalized with complaints of generalized pain and headaches; Dr. Kumar described it as an exacerbation of her MS. She was given three days of treatment (R. at 906-907; 910-914).

June 7, 2008: "This 24-year-old married female with known severe multiple sclerosis presented to the emergency room for the second time in one week, with complaint of increasing numbness and tingling of her fingers and toes, and increased stumbling. The patient was last seen in the emergency room on 5/27/08, having seven emergency room visits in 2007, and three this year for the same complaint" (R. at 1183, emphasis added). She was assessed with acute exacerbation of chronic severe multiple sclerosis (R. at

11

1184).

The medical records clearly establish repeated hospitalizations and emergency room visits because of exacerbation or flare-ups of her MS from 2006-2008. The June 7, 2008 medical record diagnosed acute exacerbation of chronic severe MS (R. at 1184). During her August 2006 hospitalization, Dr. Harms stated that plaintiff was fairly debilitated, and he would not expect that she would be able to return to any employment for at least the next few weeks (R. at 714). His medical opinion is entirely consistent with plaintiff's testimony that the longest a MS flare-up lasted was probably three weeks.

Thus, contrary to the ALJ's assertion that "there is no evidence" to support her allegation of monthly flare-ups, the longest lasting for probably three weeks, the medical evidence clearly establishes repeated flare-ups which have resulted in hospitalization in February 2006, June 2006, July 2006, August 2006, and March 2007. The medical evidence also establishes 7 emergency room visits in 2007 and 3 more emergency room visits as of June 2008. Dr. Harms indicated that her flare-up in August 2006 was so debilitating that she would not be able to return to any employment for at least the next few weeks. The court finds that substantial evidence does not support the finding of the ALJ that plaintiff's testimony on this point was not credible because of a lack of evidence; the medical evidence in fact provides

strong support for plaintiff's testimony on this issue.

As the court noted above, the ALJ apparently relied on plaintiff's testimony in making his RFC findings, except to the extent that he found it not credible. Given that the ALJ erroneously found part of her testimony not credible because of a lack of evidence, when in fact medical evidence supported her testimony, this case shall be remanded in order for the ALJ to make new RFC findings after giving further consideration to the testimony of the plaintiff in light of the medical evidence set forth above.

Furthermore, the court is concerned with the lack of any medical opinion evidence that supports the ALJ's RFC findings. Although the ALJ stated that he gave "controlling weight" to treating source opinions, no treating source opinions support the ALJ's RFC findings. In fact, the medical records show that plaintiff has had repeated flare-ups of MS that have required hospitalization or emergency room treatment, and that they have on at least one occasion resulted in a debilitating condition that left her unable to work for at least a few weeks. The state agency RFC assessments are the only medical source opinions regarding plaintiff's RFC in the record, but the ALJ stated that they were not followed based on plaintiff's testimony (R. at 17); however, as noted above, the ALJ erroneously discounted a portion of plaintiff's testimony regarding her limitations.

13

In the case of Fleetwood v. Barnhart, 211 Fed. Appx. 736 (10th Cir. Jan. 4, 2007), the court held as follows:

> **...no other medical evidence in the record specifically addresses her ability to work. Dr. McGouran did not address her RFC or her ability to work in any of his treatment notes. Those notes are therefore insufficient to draw reliable conclusions about her ability to work.** [footnote omitted] **Dr. Seitsinger, the consulting doctor, who actually physically examined her, did not form specific conclusions regarding her ability to work**. He stated only that she had conversational dyspnea and dyspnea with range of motion testing, both related to her obesity. Also, he noted that she could walk without assistive devices for short distances and could manipulate fine and gross objects. He did not state what effect her panic attacks or anxiety, both of which he assessed, would have on her ability to work. Nor did he indicate her ability to stand or sit during an eight-hour workday or what effect her assessed shortness of breath with a history of bronchitis and COPD would have on her ability to work. **To the extent there is very little medical evidence directly addressing Ms. Fleetwood's RFC, the ALJ made unsupported findings concerning her functional abilities. Without evidence to support his findings, the ALJ was not in a position to make an RFC determination.**
>
> The ALJ's inability to make proper RFC "findings may have sprung from his failure to develop a sufficient record on which those findings could be based." Washington v. Shalala, 37 F.3d 1437, 1442 (10th Cir.1994). **The ALJ must "make every reasonable effort to ensure that the file contains sufficient evidence to assess RFC." Soc. Sec. R. 96-8p, 1996 WL 374184, at *5**. Because the disability hearing is nonadversarial, an ALJ is obligated to develop the record even where,

14

> as here, the claimant is represented by
> counsel. Thompson v. Sullivan, 987 F.2d 1482,
> 1492 (10th Cir.1993); accord Hawkins v.
> Chater, 113 F.3d 1162, 1164, 1168 (10th
> Cir.1997). Even though Ms. Fleetwood's
> counsel did not request any additional record
> development, the need for additional evidence
> is so clearly established in this record that
> the ALJ was obliged to obtain more evidence
> regarding her functional limitations. See
> Hawkins, 113 F.3d at 1167-68.

Fleetwood, 211 Fed. Appx. at 741 (emphasis added). Because the ALJ's RFC assessment was not based on substantial evidence, the court reversed the district court's affirmance on this issue and remanded the case with directions to remand to the Commissioner for further proceedings. 211 Fed. Appx. at 741.

In the case before the court (Emerson), the ALJ clearly failed to comply with the clear requirements of SSR 96-8p that the RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing to specific medical facts and nonmedical evidence. The ALJ did not follow the state agency RFC assessments, which are the only medical opinion evidence addressing plaintiff's RFC. The ALJ also erroneously found a portion of plaintiff's testimony not credible when in fact it was consistent with medical treatment records. The ALJ has failed to point to credible evidence in support of his RFC findings. Without sufficient evidence to support his RFC findings, the court concludes that the ALJ was not in a position to make an RFC determination. On remand, the ALJ should consider

15

recontacting plaintiff's treating physician(s) in order to determine if additional information or clarification is available (20 C.F.R. § 404.1512(e)(1)), and/or obtain a detailed examination from a consulting physician which addresses plaintiff's functional limitations. Fleetwood, 211 Fed. Appx. at 741; Lamb v. Barnhart, 85 Fed. Appx. 52, 57 (10th Cir. Dec. 11, 2003).

**IV. Did the ALJ err in his analysis of plaintiff's credibility?**

This issue has already been addressed in part in the above analysis. This error by the ALJ will require a new credibility analysis when the case is remanded. On remand, when making credibility findings, the ALJ must set forth the specific evidence he relies on in evaluating the claimant's credibility. White v. Barnhart, 287 F.3d 903, 909 (10th Cir. 2002); Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000). Although the ALJ need not discuss every relevant factor in evaluating pain testimony, Bates v. Barnhart, 222 F. Supp.2d 1252, 1260 (D. Kan. 2002), the ALJ must explain and support with substantial evidence which part(s) of claimant's testimony he did not believe and why. McGoffin v. Barnhart, 288 F.3d 1248, 1254 (10th Cir. 2002). It is error for the ALJ to use standard boilerplate language which fails to set forth the specific evidence the ALJ considered in determining that a claimant's complaints were not credible. Hardman v. Barnhart, 362 F.3d 676, 679 (10th Cir. 2004). On the

16

other hand, an ALJ's credibility determination which does not rest on mere boilerplate language, but which is linked to specific findings of fact fairly derived from the record, will be affirmed by the court. White, 287 F.3d at 909-910.

The court would also note that the ALJ stated in his decision that:

> The claimant is capable of caring for her 4 year-old daughter and she performs household cleaning chores and shops for groceries which can be quite demanding tasks, both physically and emotionally.

(R. at 18). However, as noted above, plaintiff testified that even when she is not having a flare-up because of her MS, she can go to the store, maybe clean, or pick up small things, but she cannot clean or sweep the whole house. She has a friend that lives with her who helps her with work around the house. She indicated that she cannot cook on a regular basis, and cannot go outside and play with her child on a regular basis (R. at 52-53).

According to the regulations, activities such as taking care of yourself, household tasks, hobbies, therapy, school attendance, club activities or social programs are generally not considered to constitute substantial gainful activity. 20 C.F.R. § 404.1572(c) (2010 at 396). Furthermore, although the nature of daily activities is one of many factors to be considered by the ALJ when determining the credibility of testimony regarding pain or limitations, Thompson v. Sullivan, 987 F.2d 1482, 1489 (10th

17

Cir. 1993), the ALJ must keep in mind that the sporadic performance of household tasks or work does not establish that a person is capable of engaging in substantial gainful activity. Thompson, 987 F.2d at 1490; see Broadbent v. Harris, 698 F.2d 407, 413 (10th Cir. 1983)(the fact that claimant admitted to working in his yard, performed a few household tasks, worked on cars, and took occasional trips was found by the court to be activities not conducted on a regular basis and did not involve prolonged physical activity; while this evidence may be considered along with medical testimony in the determination of whether a party is entitled to disability benefits, such diversions do not establish, without more evidence, that a person is able to engage in substantial gainful activity). One does not need to be utterly or totally incapacitated in order to be disabled. Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001); Jones v. Sullivan, 804 F. Supp. 1398, 1405 (D. Kan. 1992).

In the case of Draper v. Barnhart, 425 F.3d 1127, 1130-1131 (8th Cir. 2005), the ALJ noted that the claimant engaged in household chores, including laundry, grocery shopping, mowing, cooking, mopping and sweeping. The ALJ concluded that claimant's allegations of disabling pain were inconsistent with her reports of her normal daily activities and were therefore not deemed credible. The court found that substantial evidence did not support this conclusion, holding as follows:

**The fact that Draper tries to maintain her home and does her best to engage in ordinary life activities is not inconsistent with her complaints of pain, and in no way directs a finding that she is able to engage in light work**. As we said in McCoy v. Schweiker, 683 F.2d 1138, 1147 (8th Cir.1982) (en banc), the test is whether the claimant has "the ability to perform the requisite physical acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world." In other words, evidence of performing general housework does not preclude a finding of disability. In Rainey v. Dep't of Health & Human Servs., 48 F.3d 292, 203 (8th Cir.1995), the claimant washed dishes, did light cooking, read, watched TV, visited with his mother, and drove to shop for groceries. We noted that these were activities that were not substantial evidence of the ability to do full-time, competitive work. In Baumgarten v. Chater, 75 F.3d 366, 369 (8th Cir.1996), the ALJ pointed to the claimant's daily activities, which included making her bed, preparing food, performing light housekeeping, grocery shopping, and visiting friends. We found this to be an unpersuasive reason to deny benefits: **"We have repeatedly held...that 'the ability to do activities such as light housework and visiting with friends provides little or no support for the finding that a claimant can perform full-time competitive work.'"** Id. (quoting Hogg v. Shalala, 45 F.3d 276, 278 (8th Cir.1995)). Moreover, we have reminded the Commissioner

> **that to find a claimant has the residual functional capacity to perform a certain type of work, the claimant must have the ability to perform the requisite acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world...The**

> **ability to do light housework with assistance, attend church, or visit with friends on the phone does not qualify as the ability to do substantial gainful activity.**
>
> Thomas v. Sullivan, 876 F.2d 666, 669 (8th Cir.1989) (citations omitted).

Draper, 425 F.3d at 1131 (emphasis added).

Plaintiff's limited daily activities clearly do not establish that plaintiff is able to work full time, and they are not inconsistent with claims of disabling pain. Therefore, on remand, the ALJ shall make new credibility findings, keeping in mind that ordinary life activities do not establish that plaintiff is able to work full time and are not inconsistent with claims of disabling pain.

IT IS THEREFORE ORDERED that the judgment of the Commissioner is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this memorandum and order.

Dated this 6th day of April 2011, Topeka, Kansas.

s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge